IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID W. HARRIS, MACHINERY & HARDWARE SUPPLY, INC., and GRANITE STONE, L.C.<br><br>      Plaintiffs,<br><br><br>  vs.<br><br><br>ZURICH HOLDING COMPANY OF AMERICA, INC., dba ZURICH NORTH AMERICA, and MARYLAND CASUALTY COMPANY,<br><br>      Defendants. | ORDER AND MEMORANDUM<br><br><br><br><br>Case No. 2:05-CV-482 TC |

This matter is before the court on cross motions for partial summary judgment filed by Defendant Maryland Casualty Company and Plaintiffs David W. Harris, Machinery and Hardware Supply, Inc., and Granite Stone, L.C. (Plaintiffs are referred to collectively as "Machinery and Hardware Supply").

Having fully considered the motions and all related filings, the arguments of counsel, and the governing law, the court now enters its Order.  For the reasons set forth below, the court concludes that the insurance agreement between the parties imposed upon Maryland Casualty a duty to defend Machinery and Hardware Supply in two separate, though factually related lawsuits.  The court therefore GRANTS Plaintiffs' Motion for Partial Summary Judgment and DENIES Maryland Casualty's Motion for Partial Summary Judgment.  Additionally, because the court finds it unnecessary to consider any facts external to the subject insurance policy and the

allegations contained in the complaints filed in the two lawsuits, the court DENIES AS MOOT

Maryland Casualty's Motion to Strike Affidavit of David W. Harris.

## BACKGROUND

At issue in these cross motions for partial summary judgment is whether an insurance

contract entered into between Maryland Casualty and Machinery and Hardware Supply imposed

upon Maryland Casualty a duty to defend Machinery and Hardware Supply in two lawsuits filed

against the company while that policy was in effect.  The lawsuits arose in connection with

attempts by Machinery and Hardware Supply to collect on a debt owed by Log Furniture, Inc.

When Machinery and Hardware Supply's requests for payment went unanswered, it obtained a

judgment against Log Furniture and ultimately obtained a writ of execution, enabling Machinery

and Hardware Supply to order the sale of Log Furniture stock.  Machinery and Hardware Supply

acquired the Log Furniture stock at the sheriff's sale and, allegedly believing it was the sole

stockholder, initiated a chapter 7 bankruptcy proceeding in an effort to liquidate the company.

Two creditors of Log Furniture--Golden Meadows Properties, L.L.C. and Nupetco

Associates--filed an adversary proceeding in the bankruptcy case, claiming that the Log Furniture

stock had been pledged to Golden Meadows before Machinery and Hardware Supply levied on

the stock.  Therefore, according to the creditors, Machinery and Hardware Supply had no

authority to initiate the chapter 7 proceeding.  About four months later, Cari Allen, originally the

principal and sole shareholder of Log Furniture, and Log Furniture itself filed suit against

Machinery and Hardware Supply, raising allegations similar to those raised in the complaint filed

in the adversary proceeding.

After the two suits were filed, Machinery and Hardware Supply approached Maryland

Casualty, arguing that Maryland Casualty had a duty to defend Machinery and Hardware Supply

2

in the lawsuits under the terms of the parties' insurance agreement.  Specifically, Machinery and

Hardware Supply argued that the claims raised in the two suits implicated the insurance policy's

coverage for claims of "personal and advertising injury," which the policy defines as including

any injury "arising out of . . . malicious prosecution [or] [o]ral or written publication of material

that slanders or libels a person or organization or disparages a person's or organization's goods,

products or services."  (Commercial General Liability Coverage Form § 5(14), attached as Ex. F

to Maryland Casualty's Mem. in Support of Mot. for Partial Summ. J. [hereinafter CGLC].)

Maryland Casualty declined to defend Machinery and Hardware Supply, citing general

exclusions contained in the policy.  Specifically, Maryland Casualty pointed to policy language

that declares:

> This insurance does not apply to [a] "personal and advertising injury" . . . [c]aused
> by or at the direction of the insured with the knowledge that the act would violate
> the rights of another and would inflict "personal and advertising injury"; [or]
> [a]rising out of oral or written publication of material, if done by or at the
> direction of the insured with knowledge of its falsity.

(Id. § 1, Coverage B, ¶ 2.)

Machinery and Hardware Supply filed the current suit against Maryland Casualty in an

attempt to recoup expenses it incurred in achieving the dismissal of the two lawsuits filed against

it.  Both parties have moved for partial summary judgment as to the scope of the insurance

policy's coverage, arguing that this court can determine as a matter of law whether Maryland

Casualty's refusal to defend Machinery and Hardware Supply was proper under the terms of the

parties' insurance agreement.

## Legal Standard Governing Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998).  The court must "examine the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment."  Applied

Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  "The

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient

[to overcome a motion for summary judgment]; there must be evidence on which the jury could

reasonably find for the plaintiff."  Liberty Lobby, 477 U.S. at 252.  See also Anderson v. Coors

Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the

nonmoving party's theory does not create a genuine issue of material fact.").

## Analysis

_____To resolve the current cross motions for summary judgment, this court must interpret the

language of the insurance contract to determine whether the terms of that contract imposed upon

Maryland Casualty a duty to defend Machinery and Hardware Supply in the two actions filed

against it.  Before turning to the parties' arguments, it is important to note that an insurance

company's duty to defend is broader than its duty to indemnify.  Deseret Fed. Sav. & Loan Ass'n

v. United States Fidelity & Guar. Co., 714 P.2d 1143, 1146 (Utah 1986).  Additionally, if the

duty to defend attaches to any claim alleged in a complaint, the insurer is obligated to undertake

the defense of its insured for all claims raised in the complaint.  See Overthrust Constructors, Inc.

v. Home Ins. Co., 676 F. Supp. 1086, 1091 (D. Utah 1987) ("Once an insurer has a duty to

defend an insured under one claim brought against the insured, the insurer must defend all claims

brought at the same time, even if some of the claims are not covered by the policy."); accord

4

West Am. Ins. Co. v. AV&S, 145 F.3d 1224, 1230 (10th Cir. 1998).  The court is convinced that
it is Maryland Casualty's burden to establish that the suits filed against Machinery and Hardware
Supply fall outside of the policy's coverage.  See Montrose Chem. Corp. v. Superior Court, 861
P.2d 1153, 1161 (Cal. 1993) ("[T]he insured need only show that the underlying claim may fall
within policy coverage; the insurer must prove that it cannot."); Cotter Corp. v. Am. Empire
Surplus Lines Ins. Co., 90 P.3d 814, 829 (Colo. 2004) (the insurer must prove that there is no
factual or legal basis on which it might eventually be held liable to indemnify the insured in the
underlying action).

I.      **The insurance policy purports to exclude coverage that it expressly provides, resulting in an ambiguity that should be resolved in favor of coverage.**

        To determine whether Maryland Casualty had a duty to defend Machinery and Hardware
Supply in the adversarial proceeding and the state action, it must first be determined whether
those suits implicate any of the policy's coverage provisions, and then, if so, determine whether
the policy's exclusionary language forecloses the imposition of the duty to defend.

        Once the duty to defend is determined to be applicable to a claim raised in a complaint,
the duty attaches to all claims whether expressly covered under the terms of the policy or not.
See Overthrust Constructors, 676 F. Supp. at 1091.  As a result, this court need only conclude
that the two complaints filed against Machinery and Hardware Supply implicate either the
malicious prosecution coverage or defamation coverage before determining the effect of the
policy's exclusionary language.

        A.  **The complaints adequately raise allegations of malicious prosecution, which is expressly covered under the policy's terms.**

        Both of the suits Machinery and Hardware Supply tendered to Maryland Casualty for
defense contained claims falling within the ambit of the policy's coverage for malicious

5

prosecution.  No party has seriously contended otherwise.

The complaint initiating the adversary proceeding in Log Furniture's bankruptcy case alleged that Harris initiated the chapter 7 proceeding by filing a voluntary petition with the bankruptcy court.  (Am. Comp. to Recover Money for Actual and Punitive Damages ¶ 9, attached as Ex. 1 to Aff. of David W. Harris in Opp'n. to Def.'s Mot. for Partial Summ. J. and in Supp. of Pls.' Cross Mot. for Partial Summ. J. [hereinafter Harris Aff.]. )  The complaint further alleges that the filing of the chapter 7 action was deceitful and part of a "scheme." (Id. ¶ 41.) According to the complaint, Machinery and Hardware Supply initiated the chapter 7 proceeding "for the purpose of harassment and [in] an effort to coerce a settlement of the debt owed by" Log Furniture.

The complaint in the state action alleges that Machinery and Hardware Supply initiated the chapter 7 proceeding with no authority to do so.  (Comp. ¶ 45, attached as Ex. 2 to Harris Aff.)  Additionally, the complaint averred that "Defendants have used the courts through their scheme of taking over plaintiffs and placing it into a bankruptcy proceeding by misrepresentations, misstatements and deceptions for an ulterior purpose for which it was not intended for their own malicious purposes to harm and destroy plaintiffs." (Id. ¶ 71.)

**B.  The policy's coverage provision is fatally inconsistent with its exclusion provisions.**

The arguments presented by the cross movants can be boiled down to one essential question: are the policy provisions providing coverage for malicious prosecution inconsistent with the policy's purported exclusion of coverage for actions undertaken by the insured with knowledge that the action will violate the rights of others or otherwise inflict "personal and advertising injury"?  Maryland Casualty takes the position that the exclusionary language does not render the expressly supplied coverage illusory because situations exist in which malicious

prosecution actions can be maintained without a showing of intent on the part of the alleged tortfeasor.  In contrast, Machinery and Hardware Supply argues that intent serves as the cornerstone of malicious prosecution claims and that Maryland Casualty cannot give coverage with one hand only to take it away with another.

"An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."  Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993).  "If a policy is ambiguous, doubt is resolved against the insurer."  Id.  "Whether an ambiguity exists in a contract is a question of law."  Id.

The language at the heart of the parties' dispute centers on what is included in and what is excluded from the policy's coverage for "personal and advertising injury."  According to the policy language, "personal and advertising injury" includes "malicious prosecution . . . [and] [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  (CGLC § 5(14).)  But, the policy also contains general exclusions that purport to exclude coverage of "personal and advertising injury" if that injury was

> [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"; [or] [arose] out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

(Id. § 1, Coverage B, ¶ 2.)

In support of its position, Maryland Casualty urges this court to adopt the reasoning of Finnie v. LeBlanc, 856 So. 2d 208 (La. Ct. App. 2003).  In that case, the Louisiana Court of Appeals adopted the position championed by Maryland Casualty in the present case.  The Finnie court analyzed provisions that, for all relevant purposes, are identical to the provisions in the policy here.  Finnie concluded that express coverage provided for claims of malicious

7

prosecution and libel were not completely extinguished by the policy's broader exclusion of coverage for acts "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Id. at 213. According to the court, "[a] plain reading of the exclusion leads one to believe that the policy does not provide coverage for acts that were done with malice, or full knowledge that the charge (malicious prosecution) or statements (defamation) were false." Id. The court concluded that because a malicious prosecution claim and defamation claim can be premised not only on knowledge of falsity, but also on a reckless disregard for falsity, the policy provided coverage for claims premised on reckless disregard, but excluded coverage of claims premised on knowledge. See id. at 214.

In contrast, Machinery and Hardware Supply directs this court to several cases that it contends represent a better reasoned approach to the potential conflict between the coverage and exclusion provisions found in the insurance policy. See, e.g., Lineberry v. State Farm Fire & Cas. Co., 885 F. Supp. 1095, 1099 (M.D. Tenn. 1995) (concluding that invasion of privacy is "inherently an intentional tort" and that a insurance policy should be interpreted in favor of coverage when it covers invasion of privacy, but excludes coverage of "injuries which were intended or expected"); Missouri Property & Cas. Ins. Guar. Ass'n v. Petrolite Corp., 918 S.W.2d 869, 873 (Mo. Ct. App. 1996) (finding that coverage and exclusion provisions were fatally inconsistent because "the policy apparently provides coverage for 'unintentional intentional torts' not committed by or at the direction of the insured").

Particularly instructive is Davidson v. Cincinnati Ins. Co., 572 N.E.2d 502 (Ind. Ct. App. 1991), which deals with the types of liability coverage in the case: malicious prosecution and defamation. The policy addressed by the court in Davidson included malicious prosecution and defamation within its definition of "personal injury," for which the policy provided coverage. Id.

8

at 506.  But the insurer contended that it had no duty to defend its insured against such claims if

the injury was the result of intentional acts on the part of the insured.  Id. at 507.  In support of its

position, the insurer urged various cases upon the court in which actions for malicious

prosecution and slander were maintained without a showing of intent on the part of the alleged

tortfeasor.  Id. at 508.  The court concluded that even though such actions are possible, those

"cases are without a doubt in the minority of malicious prosecution and slander cases."  Id.  The

court went on to state that "[a]lthough the argument can be made that [plaintiff] could recover

when malicious prosecution or slander resulted from recklessness, the possibility of [plaintiiff]

recovering under these circumstances is very remote."  Id.  As a result, the court determined that

the proper course of action was to uphold the insured's reasonable expectations of coverage.  Id.[1]

        In Utah, malicious prosecution and abuse of process are essentially considered intentional

torts.  See Clark v. Pangan, 998 P.2d 268, 270 (Utah 2000) (including malicious prosecution in a

list of intentional torts for which the Utah Supreme Court has recognized vicarious employer

liability); Gilbert v. Ince,  981 P.2d 841, 846 (Utah 1999) ("'Wrongful bringing of civil

proceedings . . . is related to and arose as an adjunct to the action for malicious prosecution . . .

and it is usually said to require malice'" (quoting Baird v. Intermountain Sch. Fed. Credit Union,

555 P.2d 877, 878 (Utah 1976));  Johnson v. Mount Ogden Enters., Inc., 460 P.2d 333, 335

(Utah 1969) ("[M]alice is an essential element to a cause of action for malicious prosecution . . .

."); Kool v. Lee, 134 P. 906, 908 (Utah 1913) ("[F]or an abuse of process . . . . [t]here must . . .

---

[1] Although Davidson states that the coverage provisions "should be enforced to satisfy the reasonable expectations of the insured," it is unclear from the opinion whether the court was relying upon the "reasonable expectation" doctrine in reaching its conclusion.  Maryland Casualty argues, and the court agrees, that the reasonable expectation doctrine has not been adopted by Utah.  See Alf, 850 P.2d at 1275 (citing Allen v. Prudential Property & Cas. Ins. Co., 839 P.2d 798, 805-06 (Utah 1992)).

be allegations and proof of a willful or intentional misuse or abuse of process . . . .  From such a use or employment of the process the law itself implies malice.");  Model Utah Jury Instructions (1993) §§ 10.19-10.20 (listing malicious prosecution and abuse of process in section covering intentional torts).

As a result, the court is convinced that the language granting coverage for malicious prosecution and the language excluding coverage for injuries occasioned by intentional, knowing acts are fatally inconsistent.  In Utah, there is simply no meaningful area of twilight in which an unintentional malicious prosecution cause of action can be pursued.  Any such area is confined to a significantly small number of cases and the court finds the reasoning of Davidson persuasive in concluding that any possibility of coverage existing in such an area is so insignificant that the coverage so provided is illusory.

Maryland Casualty argues, however, that the existence of conflicting provisions in an insurance contract does not give rise to an ambiguity that should be resolved in favor of coverage.  In support of its position, Maryland Casualty cites Alf.  In that case, the Utah Supreme Court "decline[d] to adopt a new definition of 'ambiguous' that would render an exclusion invalid simply because it conflicts with the stated coverage in some way."  850 P.2d at 1275.  Alf is distinguishable.

In Alf, the Utah Supreme Court was confronted with policy language that all parties conceded extended coverage for repairs and replacement of a broken water main.  Id. at 1273.  The water that escaped from that broken main caused extensive damage by washing away soil on the plaintiffs' property, which resulted in damage to structures built on that soil.  Id.  Although the parties were in agreement that the insurance policy covered the initial rupture of the water main, the insurance company declined to extend coverage to any damage occasioned by "earth

movement." Id. at 1275.  According to the court, the policy "specifically exclude[d] coverage for damage resulting from earth movement, despite the fact that the cause of the earth movement is a covered peril." Id.  In short, Alf dealt with a situation in which an exclusion delineated the point at which insurance coverage would terminate–when earth movement caused damage–but that exclusion did not wholly eviscerate expressly provided coverage, which the exclusion in the present case does.

An "inconsistency" of the type addressed in Alf is of a different order than the conflict between provisions present here.  While the policy language in Alf simply moved in a direction contrary to the insureds' expectations of coverage (declining to not follow the chain of causation as far as the insureds would have desired), the policy language in this case providing coverage for malicious prosecution is essentially rendered meaningless by the broad exclusionary language upon which Maryland Casualty relies.  For this reason, courts that have addressed situations similar to the present one have concluded that the discrepancies between language providing coverage and excluding coverage is not merely inconsistent, but nonsensical.  See, e.g., Lincoln Nat'l Health & Cas. Ins. Co. v. Brown, 782 F. Supp. 110, 113 (M.D. Ga. 1992) ("This is complete nonsense.  Thus, while under one provision, the policy claims that it covers claims for intentional acts such as malicious prosecution, false arrest, and assault and battery, in the other hand, the policy really covers no such claims."); Petrolite, 918 S.W.2d at 873 ("The result of such language is complete nonsense." (internal quotation omitted)).

This case presents a situation in which the policy exclusions "completely swallow up the insuring provisions." Titan Indem. Co. v. Newton, 39 F.Supp. 2d 1336, 1348 (N.D. Ala. 1999). Having so concluded, the court next discusses the proper method of addressing the irreconcilable conflict.

11

**C.  The conflicting provisions create an ambiguity that should be resolved in favor of coverage.**

Although the parties have not directed the court to any controlling authority directly addressing the appropriate manner in which  to resolve internal policy conflicts like the conflict here, there is an abundance of authority from other jurisdictions addressing the issue.  The relevant case law overwhelmingly supports the conclusion that a policy is ambiguous if it contains conflicting provisions of the type at issue in the present case.  See, e.g., North Bank v. Cincinnati Ins. Cos., 125 F.3d 983, 986 (6th Cir. 1997) ("The umbrella policy purports to cover 'discrimination,' but the exclusion is sufficiently ambiguous that it allows the defendant to argue that the policy does not provide coverage for most discrimination cases because they normally arise from claims of intentional discrimination."); Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1345-46 (7th Cir. 1995) ("These provisions--the definition of personal injury which includes intentional torts and the definition of 'occurrence' which excludes intentional torts--are ambiguous and create an internal inconsistency . . . ."); Titan Indem., 641 So.2d at 768 ("The conflict between these provisions creates an inherent ambiguity within the policy . . . ."); Purrelli v. State Farm Fire & Cas. Co., 698 So. 2d 618, 619-21 (Fla. Dist. Ct. App. 1997) (an exclusion that swallows purported coverage is "the grossest form of ambiguity" (internal quotation omitted)); Bailer v. Erie Ins. Exch., 687 A.2d 1375, 1380 (Md. 1997) (provision providing coverage for intentional torts and provision excluding coverage for intentional acts results in a "patent ambiguity"); Missouri Prop., 918 S.W.2d at 872 ("When a contract promises something in one place and takes it away at another place an ambiguity exists.").

Utah law is clear that any ambiguities within an insurance policy should be resolved in favor of coverage.  See Alf, 850 P.2d at 1274 ("If a policy is ambiguous, doubt is resolved

against the insurer."). Consequently, it is the conclusion of this court that the specific and express representation that malicious prosecution is covered under the policy must trump the general exclusion of coverage of injuries that result from intentional, knowing conduct.

## II.   Maryland Casualty's Motion to Strike Affidavit of David Harris is moot.

In resolving the present cross motions, the court has found it unnecessary to look beyond the bare allegations contained in the relevant complaints and has not relied on any facts external to those complaints in reaching its decision. As a result, Maryland Casualty's Motion to Strike Affidavit of David W. Harris is denied as moot.

## Conclusion

Maryland Casualty had a duty to defend Machinery and Hardware Supply in both the adversarial proceeding filed with the bankruptcy court and the private action filed in state court. The insurance policy provides coverage for malicious prosecution and the complaints in both actions sufficiently implicated that coverage. The policy's language excluding coverage of injuries occasioned by intentional, knowing acts is in conflict with the express representation that malicious prosecution is covered. That conflict creates an ambiguity that must be resolved in favor of the insured.

13

**ORDER**

1.      Plaintiffs' Cross Motion for Partial Summary Judgment is GRANTED.

2.      Defendant Maryland Casualty's Motion for Partial Summary Judgment is

DENIED.

3.      Maryland Casualty's Motion to Strike Affidavit of David W. Harris is DENIED

AS MOOT.

DATED this 13th day of January, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

14